**ESTEE LAUDER INTERNATIONAL, INC., and Commercial Union Insurance Companies, Plaintiffs–Appellants,**

v.

**WORLD WIDE MARINE SERVICE, INC. and Travelers Indemnity Company, Defendants–Appellees.**

**No. 648, Docket 90–7661.**

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1990.

Decided Jan. 14, 1991.

Stephen J. Sheinbaum, New York City (Waesche, Sheinbaum & O'Regan, New York City, Nicholas P. Giuliano, of counsel), for plaintiffs-appellants.

Randal D. Pratt, New York City (Harold M. Kingsley, Hicksville, N.Y., of counsel), for defendants-appellees.

Before LUMBARD and CARDAMONE, Circuit Judges.[1]

LUMBARD, Circuit Judge:

Estee Lauder International, Inc. and its subrogated insurer, Commercial Union Insurance Co., appeal from the judgment of the District Court for the Southern District of New York, Robert W. Sweet, *Judge,* entered on June 22, 1990, which dismissed their complaint after a bench trial. They contend that the district court erred in concluding that Estee Lauder could not recover from defendant Travelers Indemnity Co. under an insurance policy issued to "World Wide Marine Service for Estee Lauder." We agree and reverse the judgment.

In February 1987, Estee Lauder hired World Wide Marine Service Inc., a trucking company, to transport $180,000 worth of cosmetics from Melville, Long Island, to Puerto Rico. En route to Port Elizabeth, while parked at a rest area along the New Jersey Turnpike, the truck carrying the cosmetics was stolen. Only a fraction of the cargo was subsequently recovered. Commercial Union insured Estee Lauder for the loss of the remainder, which was worth $147,000.

At the time of the theft, World Wide was insured by Travelers under an open cargo policy. Pursuant to that policy, World Wide was authorized to issue "special marine policies" on forms supplied by Travelers. The open cargo policy placed certain restrictions on World Wide's issuance of special marine policies, but those restrictions were neither listed nor referred to on the special marine policies themselves. The special marine policies provided warehouse-to-warehouse "all risks" insurance coverage to shippers who employed World Wide to move their cargo.

Unbeknownst to Estee Lauder, World Wide had issued a special marine policy for $52,000 on Estee Lauder's behalf to cover the cargo that was stolen. World Wide also paid the policy premium. The policy provided, in relevant part:

*The Travelers Indemnity Company* in consideration of a premium as agreed and subject to the Conditions and Warranties specified below, on the back hereof and/or attached hereto, *does by this Policy insure World Wide Marine Service for Estee Lauder Intl* ... as well in his or their own name as in that of those to whomsoever the subject matter of this Policy does or shall appertain, laden or to be laden (under deck) on board the ship or vessel named: San Juan ... from Estee Lauder International/Melville, N.Y. to Estee Lauder Hemisphere Corp./Catano, P.R. upon (1) full container ... toilet preparations ... insured for fifty two thousand two hundred sixty four dollars eighty cents....

(Emphasis added).

Immediately after the cosmetics were stolen, World Wide notified Travelers of the claim. Travelers requested claim documentation, but thereafter denied coverage on the grounds that Estee Lauder had other insurance [2] and that World Wide had issued the policy to obtain legal liability coverage for itself, in violation of the open cargo policy.

Estee Lauder and Commercial Union subsequently brought action against World Wide and Travelers to recover for the $147,000 loss. Plaintiffs (hereinafter collectively referred to as "Estee Lauder"), alleged admiralty and maritime as well as diversity jurisdiction. Estee Lauder is a Delaware corporation with its principal place of business in New York. Commercial Union both is incorporated and has its principal place of business in Massachusetts. World Wide was organized under the laws of Pennsylvania and had its principal place of business there. Travelers has its principal place of business in Connecticut, where it is incorporated.

Prior to trial, Estee Lauder made three motions for summary judgment. The first resulted in judgment against defendant

---

1. Before argument, Chief Judge Oakes recused himself from consideration of this case. Pursuant to this court's rule § 0.14, the appeal has been heard and decided by Judges Lumbard and Cardamone, who constitute a quorum.

2. Whether the existence of other insurance precluded recovery under the special marine policy is not at issue in this appeal.

World Wide for the cargo loss.[3] The second and third motions were directed against Travelers, and sought to enforce the terms of the $52,000 policy issued by World Wide to cover the cargo. The court denied the motions on the ground that a question existed as to whether World Wide had, in fact, issued the policy.

The existence of the special marine policy was disputed because neither party located a countersigned original of the document. By its terms, such a policy would not have been binding without a countersignature. Although there would have been an original and four carbon copies of the policy, only the top one would show such a countersignature. This document was never produced.

After a bench trial, Judge Sweet found that World Wide had issued a special marine policy to Estee Lauder. Nonetheless, Judge Sweet stated that this did not end the inquiry. He found it relevant that Travelers billed World Wide for the issuance of a special marine policy, and that World Wide, rather than Estee Lauder, made the payment.[4] The court also noted that there was no evidence that Estee Lauder requested issuance of the policy or received a copy of it. Judge Sweet hypothesized that World Wide's "error" in issuing the policy may have stemmed from an effort to obtain coverage similar to legal liability coverage for itself.

Judge Sweet stated:

> Under the circumstances I conclude as a matter of law that there was no contract between Estee Lauder and Travelers and that based on upon [sic] the failure of Estee Lauder to request such a contract, based on their failure to provide any consideration for the contract and under those circumstances in the absence of consideration I conclude that Estee Lauder is not entitled to recover against the Travelers.
>
> . . . .

One thing I might add is I am not unaware of the fact that this is inconsistent with my first decision in this matter but that decision also had an error of fact in it which was that Estee Lauder had been responsible for or in some fashion had paid the premium for the policy, which subsequently turned out to be incorrect, there having been been [sic] no evidence of any payment even including the freight charges for the insurance at issue.

The colloquoy between Judge Sweet and Estee Lauder's attorney, Nicholas Giuliano, continued as follows:

> MR. GIULIANO: Your Honor, on that point the special marine policy itself says was [sic] taken out by World Wide for Estee Lauder.
>
> THE COURT: I have no doubt of that. And I so find as a matter of fact because that's the policy. That is what the policy states.
>
> I would amend my findings of fact to indicate that everything about the issuance of the special marine policy appears to have been in order other than its failure to comply with the cargo policy.
>
> MR. GIULIANO: I'm not sure I follow that.
>
> THE COURT: I mean in form. It was appropriate in form. I do wish that finding, that it was appropriate in form, but it did not comply with—it was an unauthorized policy is what I conclude.

The district court held for Travelers, and dismissed Estee Lauder's complaint.

█ Given the district court's finding that the special marine policy had been issued to cover the shipment by Estee Lauder, Estee Lauder is entitled to recover thereunder. The special marine policy is a contract and, by its terms, Estee Lauder is its third-party beneficiary. As such, Estee Lauder can bring action to enforce its terms. *See Hagan v. Scottish Ins. Co.*, 186 U.S. 423, 429–30, 22 S.Ct. 862, 864–65, 46 L.Ed. 1229 (1902) (where marine insurance

---

**3.** As of the date of oral argument, that judgment was unpaid. World Wide went into bankruptcy at about the time this action was brought.

**4.** In contrast, in the court's opinions on the summary judgment motions, it was stated that Estee Lauder had paid the premium.

policy is taken out in the name of A, "on account of whom it may concern," policy will insure to the interest of the party for whom it was intended by A, provided he at the time of effecting the insurance had the requisite authority from such party or the latter subsequently adopted it); *Welded Tube Co. v. Hartford Fire Ins. Co.*, 1973 A.M.C. 555 (E.D.Pa.1973); 3 E. Farnsworth, Contracts § 10.7 (1990) (stating general contract principle); A. Corbin, 4 Contracts § 807 (1951) (stating proposition in life insurance context). It is irrelevant that World Wide, rather than Estee Lauder, paid the premium.

■ We also disagree with the district court's determination that the special marine policy was unauthorized. The district court found that the policy was erroneously issued because Estee Lauder did not make a written request for it, as is required by the terms of the open cargo policy. We disagree.

When Travelers received the special marine policy from World Wide, it did not question World Wide's authority to issue the policy or demand documentation of Estee Lauder's request for it. After World Wide reported the loss of Estee Lauder's cargo, Travelers denied coverage on grounds unrelated to the lack of a written request for coverage. Travelers subsequently invoiced the premium. Three months after the purported denial of coverage, World Wide paid the premium, which Travelers retained. Thereafter, Travelers included the claim in its records, as it was incorporated in World Wide's loss premium ratio.

This case is distinguishable from *Armada Supply Inc. v. Wright*, 858 F.2d 842 (2d Cir.1988), cited by Travelers. Unlike the underwriter in *Armada Supply*, Travelers did not mistakenly invoice the premium before any question of coverage had been resolved and deny coverage as soon as the transaction became known. *See id.* at 851–52. More important, World Wide's issuance of the special marine policy did not create a new type of insurance, as was the case in *Armada Supply*. *See id.* Rather, the written request requirement was mere-

ly a policy condition, which Travelers waived by accepting payment of a premium. *See id.* Accordingly, we hold that Travelers is bound to the special marine policy that World Wide issued to Estee Lauder.

Reversed.